<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MACK CHARLES SHEPARD,

    Plaintiff,

    v.

JOHN AND JANE DOES UNION COUNTY FREEHOLDERS, *et al.*,

    Defendants.

No. 24cv5823 (EP) (MAH)

**OPINION**

**PADIN**, **District Judge.**

*Pro se* Plaintiff Mack Charles Shepard, a pretrial detainee in the Hudson County Jail ("HCJ"), New Jersey, filed a Complaint pursuant to 42 U.S.C. § 1983 against Elizabeth Police Department ("EPD") Chief Giacommo Sacca, Officer G. Tovar, Officer Johnny Arrarte (collectively "EPD Defendants"), Elizabeth Mayor J. Christian Bollwage, HCJ Director Becky Scott, HCJ Medical Director Herbert Smyczek, HCJ medical provider Wellpath, the Union County Board of Freeholders ("Union Freeholders"), and the Hudson County Board of Freeholders ("Hudson Freeholders"). D.E. 1 ("Compl." or "Complaint").

Because Plaintiff has been granted *in forma pauperis* ("IFP") status, D.E. 3, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2).

For the reasons below, the Court will **DISMISS** the Complaint *without prejudice* but will grant leave to amend.

I.      BACKGROUND

On February 18, 2023, EPD officers responded to 101 Sayre Street on a domestic violence complaint. Compl. ¶ 1. The alleged victim, Ruan Ferreira, told the officers that he was threatened multiple times by Plaintiff. *Id.* Ferreira also played a recording for the officers that included Plaintiff challenging him to a fight. *Id.* ¶ 2. The "distinctive" sound of a handgun slide being racked can allegedly be heard on the audio recording. *Id.*

Plaintiff refused officers' request to search his home. *Id.* ¶ 3. EPD applied for and obtained a search warrant from a New Jersey Superior Court judge. *Id.* Officers found a firearm and narcotics during the subsequent search. *Id.* Plaintiff was taken to the HCJ. *Id.* ¶ 4. Ferreira went to the EPD on April 18, 2023 to make a statement in support of his domestic violence complaint. *Id.* ¶ 5.

On December 8, 2023, HCJ Nurse Jane Doe, a Wellpath employee, told the detainees on Plaintiff's HCJ tier that they had to take a COVID-19 test. *Id.* ¶ 6. Plaintiff tested positive, which resulted in the tier being placed into a "pseudo quarantine." *Id.* Plaintiff also alleges the nurse allowed the detainees to administer the test themselves despite the detainees not knowing how to administer the test properly. *Id.*

Plaintiff spoke with an HCJ officer—who is not named as a defendant—about the test. *Id.* ¶ 7. Plaintiff complained that people have been sick "for some time now" and that "it would have been more effective to prevent the spread by testing every area of the facility once the very first tier was placed on so call 'quarantine.'" *Id.* The officer allegedly responded that the other areas in HCJ where people tested positive were placed into quarantine. *Id.* Plaintiff asserts that several tiers were quarantined. *Id.* ¶ 8.

2

## II. LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA") requires a district court to *sua sponte* screen a civil complaint filed by a prisoner proceeding IFP for cognizable claims and to dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from suit. 28 U.S.C. § 1915(e)(2).

To survive a *sua sponte* screening for failure to state a claim, a complaint must allege "sufficient factual matter" to show that the plaintiff's claims are facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"The Court must accept all facts in the complaint as true, draw all reasonable inferences in the prisoner's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim." *Durham v. Kelley*, 82 F.4th 217, 223 (3d Cir. 2023). Moreover, "[c]omplaints filed *pro se* should be construed liberally and held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

## III. ANALYSIS

Plaintiff raises five claims for relief: (1) equal protection, which is more appropriately considered an illegal search claim; (2) false arrest and false imprisonment; (3) excessive force; (4)

3

unconstitutional punishment; and (5) supervisory liability on a failure-to-train theory. Compl. ¶¶ 9-21.

### A. Plaintiff Has Not Stated an Equal Protection or an Illegal Search Claim

Plaintiff labels his first claim as an alleged violation of the Fourteenth Amendment's Equal Protection Clause. Compl. ¶¶ 9-11. To state an equal protection claim, a plaintiff must "allege that he was treated differently from other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected group . . . ." *Watlington on behalf of FCI Schuylkill Afr. Am. Inmates v. Reigel*, 723 F. App'x 137, 139 (3d Cir. 2018). Alternatively, a plaintiff may allege that he was discriminated against as a "class of one," which would require him to allege facts showing that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff does not make either allegation here.

First, Plaintiff asserts that "with the advancement in today's technology almost any picture, audio, situation and/or scenario can be altered to an individual's liking." Compl. ¶ 9. He next states that the alleged victim, Ferreira, did not preserve or produce the audio recording that he played for EPD officers and that the EPD Defendants did not "even inquire[] about the audio recording" on the day Ferreira gave his statement. *Id.* ¶ 10. Finally, Plaintiff asserts that EPD officers ignored his right to refuse to consent to a search. *Id.* ¶ 11. Plaintiff does not allege he was intentionally discriminated against, or that any conduct directed at him was based on his membership in a protected group. These assertions more closely resemble a Fourth Amendment illegal search claim, and the Court will review it under that framework.

4

The Fourth Amendment affords protections against "unreasonable searches and seizures" of a person's "effects." U.S. Const. amend IV. Here, Plaintiff alleges that he refused to consent to a search of his home. Compl. ¶ 3. Plaintiff does not allege that police searched his home without a warrant; he asserts EPD officers "in response to such a denial applied for a search warrant of the residence . . . ." *Id.* In other words, EPD officers respected Plaintiff's right to refuse consent and applied for a search warrant. This is the proper procedure, and "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)).

An exception exists when "the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* at 547 (quoting *Leon*, 468 U.S. at 923). "[T]he threshold for establishing this exception is a high one[.]" *Id.* Plaintiff has not met this high threshold. There are no facts in the Complaint describing the search warrant affidavit, so the Court cannot plausibly infer that it plainly would not support a finding of probable cause. The Court will **DISMISS** the equal protection and illegal search claims ***without prejudice***. 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Plaintiff Has Not Stated a False Arrest or False Imprisonment Claim

Plaintiff also seeks to bring false arrest and false imprisonment claims against the EPD Defendants. Compl. ¶¶ 12-13. "'To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause.'" *Williams v. City of York, Pa.*, 967 F.3d 252, 263 (3d Cir. 2020) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)). "Probable cause exists if there is a

5

'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). "That determination requires courts to examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Morales v. Maxwell*, 600 F. Supp. 3d 497, 509 (D.N.J. 2022) (internal quotation marks omitted). "'[P]robable cause to arrest requires more than mere suspicion, [but] the law recognizes that probable cause determinations have to be made on the spot under pressure and do not require the fine resolution of conflicting evidence.'" *Williams*, 967 F.3d at 263 (quoting *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000)). "Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *D.C. v. Wesby*, 583 U.S. 48, 55 n.2 (2018).

Plaintiff has not stated a false arrest claim. Pursuant to New Jersey's Domestic Violence Act ("DVA"), "[w]hen a person claims to be a victim of domestic violence, and where a law enforcement officer responding to the incident finds probable cause to believe that domestic violence has occurred, the law enforcement officer *shall* arrest the person who is alleged to be the person who subjected the victim to domestic violence" if certain conditions are met. N.J. Stat. Ann. § 2C:25-21(a) (emphasis added). One such condition is if "[t]here is probable cause to believe that a weapon . . . has been involved in the commission of an act of domestic violence." N.J. Stat. Ann. § 2C:25-21(a)(4). The DVA definition of "domestic violence" includes terroristic threats, which in turn are defined as threats "to commit any crime of violence with the purpose to terrorize another . . . ." N.J. Stat. Ann. §§ 2C:25-19(a)(3), 2C:12-3(a).

According to the Complaint, Ferreira called the EPD to report "Domestic Violence in progress." Compl. ¶ 1. Ferreira told the officers that "he was threatened multiple times" by

6

Plaintiff. *Id.* He also purportedly played "some form of recorded audio of the plaintiff that allegedly consisted [of] a challenge to a fight." *Id.* ¶ 2. "[A] distinctive sound of a handgun slide being racked can be heard on the audio recording." *Id.* Accepting these facts as true, Ferreira told police that Plaintiff had threatened him with physical violence several times, including at least one time with a weapon. A reasonable police officer presented with this information would have probable cause to believe that Plaintiff committed an act of domestic violence involving a weapon. Therefore, the EPD officers would have been required to arrest Plaintiff pursuant to the DVA. Plaintiff's false arrest claim fails.

A claim for false imprisonment arises when a person is arrested without probable cause and is subsequently detained pursuant to that unlawful arrest. *See Adams v. Officer Eric Selhorst*, 449 F. App'x 198, 201 (3d Cir. 2011) (*per curiam*) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)). "Thus, a claim of false imprisonment in this context is derivative of a claim for arrest without probable cause." *Lopez v. Simpkins*, No. 19-11711, 2021 WL 5239094, at *3 (D.N.J. Nov. 10, 2021) (citing *Groman*, 47 F.3d at 636; *Johnson v. Camden Cnty. Prosecutors' Office*, No. 11-3588, 2012 WL 273887, at 4 n. 2 (D.N.J. Jan. 31, 2012)). Plaintiff has failed to state a false imprisonment claim because the EPD Defendants had probable cause to arrest Plaintiff. Therefore, the Court will **DISMISS** these claims ***without prejudice***.

### C. Plaintiff Has Not Stated an Excessive Force Claim

Plaintiff's next claim is a claim for excessive force in violation of the Fourth Amendment. Compl. ¶ 14. "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of

7

a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "[I]ts proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Plaintiff alleges EPD officers approached him "with 'GUNS DRAWN' in a very intimidating and aggressive manner" that caused him "both fear and humiliation." Compl. ¶ 14. There is no "*per se* rule regarding when the use of drawn guns and handcuffs prior to a formal arrest would constitute excessive force." *Pikel v. Garrett*, 55 F. App'x 29, 32 (3d Cir. 2002). "Rather, the use of guns and handcuffs 'must be justified by the *circumstances*.'" *Id.* (emphasis in original) (quoting *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995)). The Complaint does not describe the arrest with detail, but the few facts that are provided do not state a claim. According to the Complaint, EPD officers responded to a domestic violence situation in progress. Compl. ¶ 1. While they were investigating, officers learned that Plaintiff had threatened Ferreira with a weapon at least once and found a firearm in Plaintiff's home during their search. *Id.* ¶¶ 2-3. On these scant facts, the Court cannot say that it would have been objectively unreasonable for officers to draw their weapons based on the nature of the offense and possible threat to officer safety. The Court will **DISMISS** the excessive force claim ***without prejudice***. 28 U.S.C. § 1915(e)(2)(B)(ii).

### D. Plaintiff Has Not Stated an Unconstitutional Punishment Claim[1]

In his next claim, Plaintiff alleges the Union and Hudson Freeholders failed to supervise their respective jails and create "an effective policy to prevent, detect, and contain the threat of COVID . . . ." Compl. ¶ 15. He alleges Wellpath and Medical Director Smyczek provided inadequate medical services by failing to have a COVID-19 prevention and containment policy. *Id.* ¶ 17. He also claims UCJ Director Charles was deliberately indifferent for "allowing Union County detainees to be placed into a situation of being transferred from one facility to another where there may or may NOT be an effective policy in place to prevent . . . COVID." *Id.* ¶ 18. Plaintiff asserts HCJ Director Scott was deliberately indifferent for "allowing all detainees within the HCJ facility to be subject to [in]effective policies that put . . . the detainee population in danger" regarding COVID-19. *Id.* ¶ 19.

Detainees may not be punished before adjudications of guilt. *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020). "The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" *Id.* at 326 (quoting *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) ("*Hubbard II*")). The question turns on whether conditions are "'reasonably related to a legitimate governmental objective.'" *Id.* (quoting *Hubbard II*, 538 F.3d at 236). If detainees "are subject to conditions unrelated to a legitimate governmental objective," courts may "may infer that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon detainees *qua* detainees." *Id.* (cleaned up). Courts must "consider the totality of the

---

[1] Plaintiff describes his claims in this section as being gross negligence claims. Compl. ¶¶ 15-19. The Court liberally construes these allegations as unconstitutional punishment claims for purposes of section 1983. The Court declines to exercise supplemental jurisdiction over any state negligence claims. 28 U.S.C. § 1367(c)(3).

9

circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Id.* (citing *Hubbard v. Taylor*, 399 F.3d 150, 159-60 (3d Cir. 2005) ("*Hubbard I*")).

"Exposure [to COVID-19] alone does not establish a constitutional violation," *Graham v. Aviles*, No. 22-5760, 2022 WL 16949131, at *4 (D.N.J. Nov. 14, 2022), and a jail is not required to completely eliminate the risk of exposure to comply with constitutional mandates. *Hope*, 972 F.3d at 330. Plaintiff alleges that he tested positive for COVID-19, as opposed to more exposure, Compl. ¶ 6; however, courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and courts "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation when evaluating a detention facility's protocols. *Hope*, 972 F.3d at 326; *see also Jones v. Ellis, et al.*, No. 21-13625, 2021 WL 5015921, at *3 (D.N.J. Oct. 28, 2021) ("[A] detainee asserting deliberate indifference based on exposure to COVID-19 must still establish that the Defendant had the requisite mental state, which is akin to recklessness.").

Additionally, "[a] municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Plaintiff's Complaint falls short of this standard.

"The context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference that 'shocks the conscience' for a substantive due process

10

violation." *Hope*, 972 F.3d at 330. According to the Complaint, HCJ medical staff tested the detainee population and quarantined Plaintiff in some form.[2] Compl. ¶ 6. Some tiers were fully quarantined after detainees tested positive. *Id.* ¶ 7. "The government has a legitimate government purpose in quarantining inmates exposed to COVID-19 to prevent further spread of the virus." *Brinson v. Aviles*, No. 22-5389, 2023 WL 3867241, at *3 (D.N.J. June 7, 2023). Moreover, "distancing strategies 'will need to be tailored to the individual space in the facility and the needs of the population and staff' and . . . '[n]ot all strategies will be feasible in all facilities.'" *Hope*, 972 F.3d at 330 (alteration in original) (quoting CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, available at https://perma.cc/XJ98-Q54X (last visited Oct. 1, 2024)).

It therefore appears that HCJ did have "a COVID-19 testing policy, quarantine policy, and treatment policy." *Mills v. Bd. of Chosen Freeholders*, No. 22-6450, 2023 WL 24357, at *3 (D.N.J. Jan. 3, 2023). The conditions alleged by Plaintiff "are not excessive in light of the difficulties in operating a detention facility during a pandemic, where staff is likely stretched thin due to illness and extra duties during the pandemic." *Id.* Plaintiff essentially criticizes HCJ staff for a "lack of 'effective containment measures,' and for not doing 'nearly enough' to combat COVID-19 [but] those critiques are not tantamount to establishing the [Defendants'] deliberate indifference." *Hope*, 972 F.3d at 330. "[I]mperfections in masking, testing, and quarantining procedures—particularly in the challenging environment of a detention center—do not, without more, amount to unconstitutional conditions of confinement or punishment." *Lawson v. Hudson Cnty. Bd. of Freeholders*, No. 22-4340, 2023 WL 6971540, at *11 (D.N.J. Oct. 23, 2023).

---

[2] Plaintiff does not elaborate on what he means by "pseudo quarantine" other than stating he was not removed from the tier. Compl. ¶ 6.

11

Plaintiff also fails to state a claim against UCJ Director Charles for his policy of "allowing Union County detainees to be placed into a situation of being transferred from one facility to another where there may or may NOT be an effective policy in place to prevent . . . COVID." Compl. ¶ 18. This policy is not unconstitutional on its face. "Transferring detainees to Hudson County, a facility that had more space after it ceased housing immigration detainees, is not a constitutional violation, and may even be seen as a salutary measure for reduction of crowding . . . [M]any factors . . . go into transfer decisions and the timing of inmate transfers, including safety and security concerns, and the availability of staff and resources." *Lawson*, 2023 WL 6971540, at *9. "An allegation that the transfers were scheduled at a time that was not optimal for COVID safety is not a sufficient basis to support a constitutional violation." *Id.*

As the policy is not *per se* unconstitutional, Plaintiff can only state a claim based on this policy if he provides facts that suggest Director Charles's policy was the moving force behind Plaintiff's injuries. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). As Plaintiff has not sufficiently alleged a constitutional violation at HCJ, he has not satisfied this requirement. The Court will **DISMISS** the unconstitutional punishment claim *without prejudice*. 28 U.S.C. § 1915(e)(2)(B)(ii).

E.     **Plaintiff Has Not Alleged a Failure-to-Train Claim**

Plaintiff's final federal claim alleges that Elizabeth Mayor Bollwage and EPD Chief Sacca failed to train their subordinates on how to handle domestic violence incidents. Compl. ¶¶ 20-21. He alleges that EPD officers commonly approach alleged domestic violence perpetrators with their weapons drawn. *Id.* ¶¶ 20-21.

"[F]ailure to train may amount to deliberate indifference where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional

12

rights." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). "A plaintiff sufficiently pleads deliberate indifference by showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011)) (alterations in original).

"Additionally, the identified deficiency in a city's training program must be closely related to the ultimate injury; or in other words, the deficiency in training must have actually caused the constitutional violation." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (cleaned up) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)). Here, Plaintiff has not sufficiently alleged a constitutional violation that was caused by an alleged deficiency in EPD's training. His conclusory statement that Defendants acted "with a total disregard of citizens['] rights" is insufficient. *See Medina v. Allentown Police Dep't*, No. 23-2055, 2023 WL 7381461, at *1 (3d Cir. Nov. 8, 2023) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995)). The Court will **DISMISS** the failure to train claim *without prejudice*. 28 U.S.C. § 1915(e)(2)(B)(ii).

    **F.**    **The Court will Grant Plaintiff Leave to Amend**

Generally, a plaintiff who files a complaint subject to dismissal under [Section 1915] "should receive leave to amend unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Because Plaintiff may be able to allege

13

facts that would cure the deficiencies identified above, the Court will allow him **45 days** to submit a proposed Amended Complaint. The proposed Amended Complaint will be subject to this Court's Section 1915 review prior to service. Failure to submit a proposed Amended Complaint within 45 days of the accompanying Order will result in dismissal of all claims with prejudice without further action by the Court.

IV.   **CONCLUSION**

For the reasons above, the Court will **DISMISS *without prejudice*** the Complaint. The Court declines to exercises supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). Plaintiff may submit a proposed Amended Complaint within 45 days.

An appropriate order accompanies this Opinion.

January 16, 2025

_____
Evelyn Padin, U.S.D.J.

14